All right, next case, Larios v. Mukasey. Larios v. Mukasey. Good afternoon, Ms. Kim. Good afternoon, Your Honors, and good morning, Your Honor. May it please the Court, Soji Kim from the Law Office of Regis Fernandez, here on behalf of the petitioner, Mr. Larios. And with the Court's permission, we would like to request five minutes for rebuttal. Fine. Thank you, Your Honor. This case comes off seemingly a lot more complicated than it actually is, Your Honor. Mr. Larios pled on April 1999 to third-degree terrorist threat under the New Jersey Statute 2C, colon, 12-3, subsection A. Now, the government would have this Court believe that under the categorical, or even under the modified categorical approach, that that would be a crime constituting a moral turpitude. However, that is simply not the case. She just conceded that. Under both standards of review, under the categorical standard of review, we looked straight at the elements of the statute. And the statute is quite clear that it is not clear that it will necessarily always be a crime of moral turpitude. What is your take on the immigration judge or the BIA's interpretation of 2C, 12-3? The immigration judge, Your Honor? Well, I think the BIA affirmed the immigration judge's interpretation of the statute. Well, as you know, Your Honor, this Court owes no deference to either the decisions of the immigration judge or the Board of Immigration Appeals. I'm not sure that's accurate. Maybe that's a separate question that you can address. But my question here is about their interpretation of 12-3. Well, as it's stated in the transcript, Your Honor, the immigration – That a terroristic threat is a crime of violence. Well, the immigration judge is unclear and was confused as to the actual – to answer your first question, he was unclear as to whether – to understanding the statute as it stands. Okay, let's go with the BIA, which is probably the more important one in the decision that we're looking at. Well, the BIA affirmed but added its own reasons for why they thought it was a crime of moral turpitude. And because they both raised sua sponte different reasons for why they thought it was a crime of moral turpitude, this Court owes no deference. But its decision is that terroristic threat is a crime of violence and a crime involving moral turpitude. Well, as you know, Your Honor, in analyzing whether a crime constitutes a crime of moral – Well, do you agree or disagree with that was my question. We respectfully disagree, Your Honor, and this is why. You disagree with their – was that not their decision? Their decision was that it was – that statute necessarily was a crime of moral turpitude, and we disagree with that, Your Honor. And the reason why is because not in every – to be a crime of moral turpitude in every instance of the statute and taking in mind the least – the minimum amount of – the minimum amount of conduct required to be charged under that statute, it had to have been a crime so morally depraved and turpitudinous to be considered a crime of moral turpitude. Okay. But plainly on its face, yes, Your Honor. Hold up, because in your briefing, you talk about this in terms of, well, there's a recklessness prong here, and therefore that necessarily lacks the level of culpability to be turpitudinous. And the question that I had when I read that was it's – is there a recklessness mindset with regard to the threat or is it recklessness with respect to secondary consequences? And let me try to make that question clear. Okay, thank you, Your Honor. The statute itself – let's go to the statute itself. Okay. The statute reads, a person is guilty of a crime of the third degree if he threatens to commit any crime of violence with the purpose to terrorize another or to cause evacuation of a building, place of assembly, or facility, et cetera, or in reckless disregard of the risk of causing such terror or inconvenience. So my question to you is, is it a fair reading of that statute to say that it requires somebody to have the intent to terrorize and – or is there – or is this risk that's associated with the statute a recklessness – excuse me. Is the recklessness prong that you keep pointing to, is it the mindset as you're terrorizing or is it a mindset associated with I don't care what happens after I terrorize? I apologize for that long question, but do you understand what I'm trying to get at? I think so, Your Honor. May I rephrase? Sure, please. Be my guest. So your question, Your Honor, is whether the recklessness is attached to the reckless disregard of the risk or the reckless disregard of the mindset actually. Yeah, that's precisely it. Because if you're – if it's the latter, I can see your argument. That is, if it's, oh, I just have a reckless mindset, I'm not really intending to terrorize, I'm just recklessly doing this. But if it's the former, that is, I'm intending to terrorize and I'm reckless as to what the consequences are, that seems to me to be a different thing. So help me with the statute. Okay, thank you for the clarification, Your Honor. To answer your question, just very simply, what's really important is the mens rea here. And the mens rea, you have to have a mind so depraved and so morally culpable that as a society, we're going to say that this is a crime of moral turpitude. And this guy, Your Honor, was only – Wait, but you're going into the facts of the case, though, right? Can't we tell from looking at the words of the statute? Absolutely not, Your Honor. What, recklessness? Yes, how we should interpret recklessness in the Jersey statute. Why do you have to go into the facts of the offense itself? Well, recklessness is – They looked at the statute. Well, the statute on its face is plainly not clear. I mean, what is clear is in the plea – in the plea transcript, Mr. Larios pled – we're only looking at what he pled to here, Your Honor. And what he pled to was conduct. Conduct that may – Recklessly threatening simple assault. That threatened with an assault. And per the legal analysis for whether a crime is a moral turpitude, all you look at is the element of the statute. And where it's unclear, as it is here, where it says, or in reckless disregard, it's unclear that in reckless disregard of the risk of causing such terror is mens rea of such moral turpitude that it's necessarily always going to be a crime of moral turpitude. It will not always be a crime of moral – Recklessness is not always a crime of moral turpitude. Recklessness can be many things, but it's not always going to be a morally turpidus mind. Some 12-3 offenses are crimes of moral turpitude, and some are not. That is correct, Your Honor. And how do we analyze which is which? Well, under that approach, because the statute is divisible and because some fall and some do not fall, the next step would be under the modified categorical approach where you look at only three things, the record of conviction. And even if we were to look at the record of conviction, this is not a crime of moral turpitude. At best, Mr. Latimer admitted – Excuse me. Let me get one thing that's puzzling. In the statute, there's a Section A and a Section B. He pleaded to what section? He pleaded to Section A, Your Honor. A. Okay. Thank you very much. You're very welcome. What precisely did he plead guilty to? Well, that's precisely – that's exactly the point, Your Honor. It's unclear from the record, and all Mr. Larris is asking is before the government should say he has committed a crime of – and I get the impression that he pled guilty to recklessly threatening simple assault. Is that right or not? I will clarify that, Your Honor. Yes, in a general sense, he pled to conduct. And nowhere in the record does it say that there was any verbal threat, just conduct that threatened – conduct that seemed to have threatened with an assault. And we look at the minimum culpability here – Can you be more specific than that? I mean, if you're asking us in a modified categorical approach to look at what he pled guilty to, then I want to know what did he plead guilty to. Doesn't the – Simple assault, Your Honor. No. He pled guilty to threatening, right? He pled guilty to 2C12-3A. That's not a simple assault statute. That's a threatening to commit a crime of violence. If I may, Your Honor, may I read from – The way I understood it, Your Honor, is that the court asked on the plea transcript, you did engage in such conduct – and they specifically said conduct – involving a person named Louis Pelliman that threatened with an assault, constituting a terrorist threat in the third degree. So all it was was such conduct and assault. There's no such thing as – I mean, he did not plead to anything more than simply that. Well, I guess I'm having a hard time with that when you say he didn't plead to anything more than just that. The record is, I mean, he pled guilty to a statute. A statute he pled guilty to was not simple assault. It was third-degree threatening. At least that's clear on the record, right? Well, actually, that is clear. But what is also clear on the record is that that statute, this 2A statute, also contains a lot of other things, not just simple assault, not just threatening to commit – I mean, even though it sounds awful on its face, it says terrorist threats, but it goes from the range of simple – I mean, crimes of violence go from simple assault all the way to serious offenses. This statute on its face is very unclear. And if anything, Mr. Larios, under the – Does the statute – can you read the statute to find someone guilty of threatening to commit a simple assault? Terroristic threat to commit a simple assault. Can you read the statute that way? Well, we read it, Your Honor, as in reckless or in reckless disregard of the risk of causing such terror or inconvenience. And precisely because it is so unclear on its face, Mr. Larios is requesting – respectfully requesting that it get remanded to the immigration judge in order for the immigration judge to specify as to what exactly, you know, he's being held for. Because on its face, it can either be a crime of moratorium or it cannot. Is that your request, that this case go back to the BIA to send it back to the immigration judge for the immigration judge to tell us precisely what Mr. Larios pled guilty to? Because – yes, Your Honor, because it's not clear on the face of the statute, because the statute is divisible, and because a crime of moratorium can or cannot be – Is that – is this kind of like an academic exercise? I mean, is it going to make any difference? We believe it does because Mr. Larios, if at best, only pled to what comes out to really simple assault, and that's not a crime of moratorium. I asked you before if the statute allowed someone to be found guilty of threatening to commit a simple assault. You didn't give me an answer. I don't think you did. Oh, I apologize, Your Honor. Under 12-3, can an individual be convicted or plead guilty to threatening to commit or terroristic threat or terroristically threatening to commit a simple assault? I would answer, Your Honor, the answer would be yes because – I mean, that would put you in a different position than a terroristic threat to commit a crime of violence. To be honest, Your Honor, I think that this is the wrong statute for him to have been charged in, but this is the case before us. You can't change – Well, let's go to the record in the state court. The court – it is my understanding you're going to enter a plea of guilty to count one. It says it would be under subsection A, the threat to commit an assault, a crime of violence. And then the court said, did you engage in such conduct involving a person named Luis Palaman that threatened Mr. Palaman with an assault constituting a terroristic threat in the third degree? Is that correct? Yes. Yes, Your Honor. So we have it. There it is. Right. Well, we concede that, Your Honor, but our point is that that is not a crime of moral turpitude. I mean, to say that it is would be embellishing artificially what it means to really be a crime so depraved that as a society we already say that it's a crime of moral turpitude, which simple assault cannot possibly be. Is shoplifting a crime of moral turpitude? My understanding is shoplifting is a crime of moral turpitude. Okay, so if shoplifting is a crime of moral turpitude, are you going to make much headway by saying that turpitude and its crimes are so outrageous they shock the conscience? Well, I will say, however, that simple assault is not a crime of moral turpitude, so how can a threat to – why would the actual commission be not a crime of moral turpitude but the threat be? I mean, what the BIA has said is that recklessness itself has never been alone a crime of moral turpitude. I think that's a good argument, but where does a simple assault come from? I thought that was in your brief, but apparently. Yeah. I'm sorry, Your Honor. Where does a simple assault come from? Simple assault is not in the statute. Let's look at a person is guilty of a crime at the third degree. If he threatens to commit any crime of violence with the purpose to terrorize another or to cause evacuation of a building ETC or in reckless disregard of the risk of causing such terror or inconvenience. That's the statute. Yes, Your Honor, but also in New Jersey, New Jersey interpretation of crimes of violence is very, very broad. It encompasses simple assault all the way to serious offenses, and in the interest of MR, simple assault is not a crime of moral turpitude. So Mr. Larios. Threatening to commit a crime of violence could be threatening to commit a simple assault. I'm sorry. I was nervous and I just lost it. So threatening statute third degree to commit a crime of violence could be threatening to commit a simple assault because simple assault is a crime of violence. Simple assault is not a crime. It doesn't. Simple assault is is encompassed in the definition of the crime of violence, but in the crime of violence. I guess your answer would be yes. I'm sorry. Logically, it would have to be yes. All right, go ahead. Wait, the crime of violence can't. Miss Kim. Miss Kim. Miss Kim, you said you're nervous. Well, all three of us are nervous. So you just join the party and relax. It's my first time here. Your Honor. Let's let's get into, you know, I I'm an old unreconstructed common law lawyer from Pennsylvania. What what do you mean by assault? What is assault? You know, assault is making a threat. There's the making the threat is the assault. OK, and and then touching the individual is battery. And so the old crime was assault and battery. And all this statute talks about is who threatens if you just threaten to make a statement. OK, now under that, I'm just I have difficulty following your argument when you're talking about there was no assault. Your Honor, there was when he pleaded when he pleaded guilty to whatever he did. Your Honor, the petitioner never actually laid hands on Mr. Mr. Pollyman. I'm sorry. That's the battery. That's battery. Right. Assault is making a threat. And the statute, the statute, again, is if he threatens that threatens to commit any kind of crime of violence. That's what he pleaded guilty. Right. But but the crime doesn't necessarily make it a crime of more turpitude. And it was never there. It's unclear that was ever verbalized. It's just that what is clear that was that by his conduct, the threat seemed apparent. That's what he pled to. OK, maybe maybe we can get you back on rebuttal. Thank you, Your Honor. Thank you. Mr. Nicastro. Thank you, Your Honor. Maybe I can ask you that one question to see what your your take on it is. We're talking about threatening to commit a crime of violence. Yes, Your Honor. Now, can you. With the purpose to terrorize. Can with the purpose to terrorize. Is a simple assault a crime of violence? It could be, Your Honor. It could be a crime of violence. So you could you could have in this case a threat to commit a simple assault. With the purpose to terrorize. I think that. All right. Well, it's not just with the purpose to terrorize because the statute goes through the different purposes and the purposes are. They include. Do they not? The. With the purpose to terrorize another or to cause evacuation or to cause serious public convenience or in reckless disregard. I mean, it's a it's a threat to commit a crime of violence with a series of possible. Purposes. Right, Your Honor. And I think it goes back to what this court looks at in determining whether a crime is considered a crime involving moral turpitude. And that is. Trying to get to the bottom of that to figure out what he was convicted of. Right, Your Honor. He was convicted of. I think you're on. Judge Jordan said it correctly of terroristic threats under 2C12-3. That is what he was convicted of. So, hey, let me ask the question which I asked poorly to your colleague and see if I can do a better job of it. First, if there if the only mindset here was recklessness, that is, if if there was a way to violate the statute with no greater mens rea than recklessness. Would you agree that that would be problematic in terms of a crime of moral turpitude? Not necessarily, Your Honor. Because I think this court found in Partaker and as well as in NatPIC that a crime involving recklessness doesn't could indeed be a crime involving moral turpitude. I think in Partaker, in this circuit, it went through the different degrees of culpability under the New Jersey statute, which involves knowing, reckless, purposefulness, and neglect. And they found because in that particular case the statute included not only purposefully and recklessly and knowingly, it also included negligently. And that's where they could not find that under that statute it categorically was a crime involving moral turpitude. That's why they looked beyond the statutory language to get into, to find that the statute was divisible and they had to look at the specific conduct. In this particular case, we don't need to do that. And we don't need to do that. Why? Because recklessness, even if recklessness is the mindset, you're saying that's enough. That's correct, Your Honor. Okay. Now, assume that for the sake of discussion that we didn't think that was enough, that you needed to have something more than recklessness in mind. My question to you at that juncture is, is the mens rea that this statute is talking about an intent with respect to the threat, with the recklessness being only as the secondary consequences, or is the recklessness that's included in the statute an alternative mens rea altogether? I think it's an alternative mens rea. I think it's to the – I think if I understand your question correctly, it's to the terroristic threat itself. So you could conceivably commit a terroristic threat without intending, but with reckless disregard. Is that your position? You would first have to intend to do the threat. Okay. Okay. And as part of it with the reckless disregard of whatever consequences. All right. I understand. So what you're saying is it has to be an intent crime, even though you could be reckless about what follows from what – from the initial intent you have. I believe that's correct, Your Honor. Okay. Thank you. So, indeed, I think this Court is clear in particular that it will look – when it looks to the statute within the categorical approach, because that is what the Board did. I think you're right, Judge Fuentes. They did not look at the background conduct, what happened here, the plea colloquy, the record of conviction, or any other documents. They simply looked at under either A or B of this particular statute, it is a crime involving moral turpitude based on the culpability within the statute. But is it a divisible statute? I mean, there are several different types of offenses. We don't believe that this is a divisible statute because – and I look at this Court's ruling in Partico, which is a similar case in this area. And there they found that statute was divisible because it had four degrees of culpability. One included negligent conduct, which they – this Court determined was not – you cannot commit a crime involving moral turpitude with a culpability of negligence. Could you not have a crime under the statute that we would call recklessly threatening to commit a simple assault? If simple assault was a crime of violence, you can. You said before it was. Yes. Yes. Then if it's a crime of violence – Well, if that's true, why isn't this statute divisible? Because, Your Honor, under the culpability of – and again, this Court under the categorical approach only looks at the culpability. And if the culpability within the statute, the least degree of culpability of conduct within a statute satisfies a crime involving moral turpitude, then the analysis stops. Let me – let me – let me – I wasn't here. I wasn't due that. I'm – Judge Alder, sir. I'm – I have a little problem with the – with the – your position, counsel. In our Kanapak case, it says, the BIA limits moral turpitude to crimes in which defendant consciously disregards a substantial risk of serious harm or death to another. Thus, recklessness crimes for assault with a deadly weapon or manslaughter involve moral turpitude. Simple assault does not. Yes, Your Honor, but again, I think the – the issue really is not whether it's a simple assault because I think this Court realizes that the conviction is not for a simple assault. It's for a terroristic threat. If it was for a simple assault… Exactly. …it would be much different. But I asked you before, could you not be charged with terroristic threat to commit a simple assault? If the simple assault was a crime of violence. Okay. But you said before it could be. It depends on – on – I think… Under New Jersey law, what is a crime of violence? Under New Jersey law. Under New Jersey law, Your Honor, I – I can't describe all of the different crimes of violence under New Jersey law, but under the federal law and this Court's review of crimes of violence, it depends on what the particular statute defines. Is there – it would be crimes of violence, I think, under 16A or 16B of the U.S. Code, which determines whether there's a substantial risk of force or whether there's an element involved in – in the violence. So it would – it would be determining under that particular statute whether it's a crime of violence. But I don't think this Court has to go to the crime of violence review. I think we just, under its precedent, look at the culpability within the statute. And if the culpability within the statute of the crime is one that requires either purposefully, which it does, and recklessly – reckless conduct, which it does, then it is, in fact, a crime involving moral turpitude. And this Court does offer some deference to the Board in what it determines to be a crime involving moral turpitude. Did the Board – did the Board address whether this statute is a divisible statute or not? It did not, Your Honor. It was – the specific argument of whether or not this statute was divisible was not really raised before the Board in that the discussions concerning recklessness or purposefulness were – If we were to – I mean, just hypothetically, if it was a divisible statute, then we would be applying the modified categorical approach, which means that we have to take a look at his actual conduct on record of conviction. You would. Under this circuit's precedent in particular, that's correct, Your Honor. If you cannot find categorically that it is a crime involving moral turpitude, then you would look at certain – But your position is every single conviction possible under 12-3 involves a crime of moral turpitude. That's correct, Your Honor, because of the culpability levels, which there is really only two within this statute amounts to turpitude as a condom. We have a little time. Maybe you can talk about the deference that we should give if the BIA's conclusion, whether that's entitled to Chevron deference or not. Yes, Your Honor. Under the precedent of this court, the court does give Chevron deference to the Board's interpretation of what crimes constitute crime involving moral turpitude. It's a very strict legal interpretation – legal matter, isn't it, that is the interpretation of a statute? Aren't we just as qualified as the Board of Immigration appeals to do that? Well, I think under the legal question before you, yes, of course you look at it de novo because it is a legal question on whether a particular offense involves a crime involving moral turpitude. We have to conclude that their interpretation is reasonable. That you owe deference to it. Now, if they were interpreting a strict criminal statute, okay, and just not whether it involves a crime involving moral turpitude, then this court is applying that it would not owe deference to that. But in the area of crimes involving moral turpitude and what the Board determines is or is not a crime involving moral turpitude, as they have defined that particular term, yes, there is owed deference. And I think your most recent case in Solomon, which is unpublished, accords to that, that motion's terroristic threat involves a corrupt or a vicious mind. Do you have a case to cite to us that says we defer to the Board's judgment about what's turpitudinous? Yes, Your Honor. I believe it's a part to Kurt as well as a neck pick. Let me ask this. You say in your brief on page 13 that as a threshold matter, Mr. Larios never raised the argument that the statute under which he was convicted was divisible and that his conviction may have been for reckless conduct. That was never, you say, brought before the Board. Your assertion is that for the Board, the only argument that was made is that this is just not a bad enough crime to meet the heightened standard of depravity that ought to be taken into account. If that's the case, is the entire argument that we're having here academic because it was never properly put before the Board itself, whether or not this was a divisible statute? I think on the divisible statute question, that would be correct, Your Honor. I think that was part of the exhaustion argument that was laid out in front of our brief. Assuming we got past that, how do you respond to the argument that I hear in some of the questions from my colleagues that if the statute is written, the one he pled to, would it allow somebody to be convicted for threatening to commit a simple assault, which is sort of a threat to threaten, but that actually committing an assault, not threatening twice removed or once removed, but actually threatening, is not a crime of moral turpitude. How can you take it one remove away and have it be worse? How can it be turpitudinous to threaten an assault and not be turpitudinous to commit an assault? I think in this particular case, Your Honor. Leave this particular case alone. Okay. I think if you are threatened to commit an assault, which falls within the crime of violence definition, and I'm taking the hypothesis, I don't know, I assume that it may be in certain circumstances, with the purpose to terrorize another, I think you have to have that within your assault hypothetical. Yes, it would be, Your Honor. Then you've just changed my hypothetical, because I thought we'd established that the statute as written has multiple purposes. You can have the purpose to terrorize, but you can also have other purposes, the purpose to cause a building to be evacuated or a reckless disregard. So it's not just the purpose to terrorize, and that's not all we're talking about here, or at least if we get past your waiver argument, that's not all we're talking about. So go with the hypothetical I'm putting to you. How could it be rational for the Board to say it's not the crime of moral turpitude to commit an assault, but it is a crime of moral turpitude to threaten to commit an assault? Well, I think, Your Honor, the rationality of the decision goes to what the culpability and the mens rea is involved here, and I think that is part of the analysis that must come into play whenever you look at the crime involved in moral turpitude. I mean, it's not just I threatened to assault you, it's I threatened to assault you with the purpose to terrorize or to evacuate a building or to do some other thing. That is why a simple assault, which is, in view of criminality, a lesser degree of culpability than terroristic threats, and that's how the courts have treated it. I mean, if it was just a simple assault, he would have been charged with such. In Ray Ruiz Agonia, you might be familiar with the case the BIA held looking at Hawaii's terroristic threat statute. That statute did not categorically create a crime involving moral turpitude. Yes, Your Honor, I'm familiar with that. That is a very specific case involving interpretation of Ninth Circuit law within that particular circuit and the wording of that particular statute. I would really refer this Court to its most recent unpublished decision in Solomon. You're saying we should ignore in Ray Ruiz Agonia? Yes, Your Honor, because first it's in a different circuit which has a different law based on the crime. There's only one Board of Immigration Appeals. Right, but they based it on following Ninth Circuit precedent. When you read that unpublished decision, their entire decision is focused and catered to interpreting the law within that circuit. It says under this circuit law, it cannot be the statute that they interpret in Hawaii. But in Solomon, they looked at the terroristic threat statute in Delaware and found that it is indeed a crime involving moral turpitude under language, and they deferred to the Board's decision that specifically noted that making terroristic threats or intentional terroristic threats to another involves a vicious or corrupt mind. And then they said, we will defer to that because that is a crime involving moral turpitude. Mr. Sanders, thank you very much. We'll get Ms. Kim back. Thank you, Honors. With this Court's permission, I would like to briefly, for a few seconds, go through each and every case that the government has presented and address those issues. Before you do, can you answer the waiver argument, the argument made in your opponent's brief that we don't even need to be talking about divisibility here because you never raised it with the Board. Absolutely, Your Honor. This office, our office responded to that in our reply brief. The government is simply wrong in the sense that these issues were raised sua sponte by both the immigration judge and the BIA. And pursuant to our briefs and our reply brief, we have addressed that these were issues that obviously this Court has jurisdiction because these were raised by the courts below, and there was a lot of ambiguity. Moreover, we disagree with the government's contention that deference is not due here because we are interpreting the New Jersey statute, and the interpretation of a state statute is clearly within the jurisdiction of this Court, and therefore this Court is best to address that issue. I got you. Thank you, Your Honor. With respect to Solomon, going backwards, this office received that case October 4th. That case is regarding a Delaware statute, which is not, obviously we're not doing a Delaware statute before this Court, and it also specifically states in the body that the statute at issue is if, quote-unquote, the person, you're guilty of that Delaware statute if the person threatens to commit any crime likely to result in death or in serious injury to personal property. That is simply not the case here. This simple assault that occurred, or didn't occur, excuse me, or didn't occur, but simple assault at issue here is clearly not an issue of I'm going to kill you. Perhaps at best, in my frankness, I could say, maybe at best you could say I'm going to kick your butt, but it's not I'm going to kill you. And Solomon certainly doesn't apply here. Moreover, Your Honor, I would like to address the Partica case that this Court addressed. Partica is a classic example of the case that we're confronting here because that statute in Partica was divisible, and it wasn't clear from the statute alone whether it will necessarily always be a crime of moral turpitude. And Petitioner respectfully submits that reckless disregard of a public convenience will never always be a crime of moral turpitude. In Partica to grant you the request that you're seeking, which I understand to be to send this case back, we would have to conclude that the statute is divisible. Yes, Your Honor. Is that accurate? The statute on its face. Because that's what you want. You want the BIA and the immigration judge to look at this and arrive at what? In other words, to look at the record of conviction, so that you would like the immigration judge to apply the modified categorical approach. Yes, Your Honor, because we're approach, we would have to conclude that this is a divisible statute. Yes, Your Honor. We believe that the Petitioner deserves a direct. But just going back to Judge Jordan's question, in the record you did make a specific argument in the Board of Immigration Appeals that this is a divisible statute, and you should apply the modified categorical approach. Our motion to the Board of Immigration was that the immigration judge had erred because under both approaches, it's not always going to be a crime of more turpitude. All right. You mentioned both approaches. Well, the Board of Immigration themselves actually never got into that issue. No, but you asked. Your argument was that under both approaches. Is that correct? I believe our argument was that the immigration judge erred because, yes, it's not a crime of more turpitude. I refrain from specifically stating exactly if it was under both, but we contend that under both, it's still not a crime of more turpitude. May I ask you this question? Yes, Your Honor. You're familiar with the record. At the state trial to which he entered a plea of guilty, is there any record of the exact language he used in making this threat? In the plea transcript, is that your question, Your Honor, in the actual hearing before the immigration court? Yes. My understanding is all that we can really get from that transcript is that there was an assault via conduct, but no actual statement saying that he verbalized anything. So I read somewhere he weighed the knife in the guy's face. He said, give me your money. That would be under the record of conviction. And if we wanted to go into the record of conviction, which I – But that's what Judge Aldo said. That comes from the record. That's what I'm asking. I'm asking exactly what was the conduct, verbalization or conduct? The record, if we were to look at, and even though we should only look at the elements of the statute, if we were to look at the record of conviction, if you don't mind, Your Honor, may I read from the sentence memo, which will clarify that position? Yes. The sentence memo states, Both Mr. Larios – I'm sorry. Both Mr. Larios and Mr. Palaman's stories concur in that Mr. Larios did not make any movement towards Mr. Palaman at any time during the incident. Further, both Mr. Larios and Mr. Palaman agreed that Mr. Larios yelled at Mr. Palaman that he did not want his money and that he was only joking with him. That was when Mr. Palaman then ran to the phone book. While at the phone booth and within sight of Mr. Larios, Mr. Palaman viewed Mr. Larios turn and walk away from the area. Mr. Palaman called 911. Thereafter, Mr. Larios was arrested within four blocks from the incident. Okay. You want to finish up? Yes, Your Honor. Petitioner respectfully submits that while what he did was not a nice thing, it would just be wrong for this Court to find that every reckless disregard of the risk of causing any inconvenience will always be a crime of moral turpitude. And for this Court to go through all the facts of the case would be like having a mini trial all the time. I have not been practicing law, but that's just not right. It should not be a mini trial, and we should only look at the elements and the record of conviction, which clearly says that – a reasonable reading would clearly say that it will not always be a crime of moral turpitude. And for that alone, Mr. Petitioner respectfully requests that this case be remanded or it's found that this was not a crime of moral turpitude. Thank you, Your Honors. Thank you. Thank you. Did you take this case pro bono? This is my first time approaching any judge, Your Honor. No, but did you take this pro bono, that is, from your law firm or as public service? Is that right or not? I'm actually – I don't think so. This is a case that my superior had just told me to present. Mr. Larios has a minimum wage position, is my understanding, and he can't afford to pay the legal bills, but we're obviously going to take on this case as aggressively as possible anyway. Well, in any event, well, thank you. Thank you, Your Honor. If that's the case, it's a good public service, and the Court thanks you for helping Mr. Larios out. I'm sure he'll appreciate it. And you've done good. I hope you'll come back and join us in another case. Thank you, Your Honor. I hope you haven't been discouraged. Thank you. Thank you. Mr. Sanders, thank you as well. We'll take the case under advisement.